Okay. Oh, we have come to the last case of the day, and that is number 191179, Robertson v. State of Wisconsin Department of Health. Good afternoon. Good afternoon. And do you pronounce your name Sal-a-wa-da? Sal-a-da. Say it again. Sal-a-da. Sal-a-da. So good afternoon, and may it please the Court, my name is Rebecca Sal-a-da, and I represent the plaintiff appellant, Vanessa Robertson. The district court in this case erred in granting summary judgment when it found that Ms. Robertson was not retaliated against for reporting the abusive conduct of her prior director, Ed Kamen. And by first being harassed incessantly by the person who came after him, and also when she was not awarded the position of director when she was clearly significantly more qualified, and when the decision makers used primarily subjective decision making in making that decision. Does Ms. Robertson identify any retaliatory conduct by the department that took place between January 2014, when the complaint against Kamen was first made, and November 2014, when Evans took over? For instance, is there any indication that the department interfered in her ability to perform as acting director, or otherwise took action against her during that time? No, there isn't, and I know that the defendant and the district court have cited to that, but frankly, we don't believe that that's terribly relevant. The reality is that the retaliation was not wanting a person who had made these complaints in the position of director, that we believe that a jury could find under these circumstances, that while it was okay to have her stay in her position, that having somebody who had made these complaints and had forced the resignation of a popular director, at least as far as Madison is concerned, they didn't want her in that position. With respect to Ms. Evans, certainly there was no way she could have done any retaliation prior to November, because she wasn't even there. I think the timing, particularly when it comes to Ms. Evans, is that she did the retaliation at the very first opportunity. Similarly, the department made its retaliation at its first opportunity, that it wanted to, in ensuring that somebody who had made that complaint was not placed in that position. Ms. Evans' harassment was severe. It was not the pettiness that a defendant and the district court would have you believe. I believe that it was a jury could find that the fact that she was prevented and kept from working with her direct reports in a number of different ways, first by having the joint meetings reduced, telling her not to communicate with them, and then when she even tried having one-on-one meetings with them, Director Evans would come in and make it so that these meetings became so uncomfortable that they stopped having them. The other ways in which there was a material adverse harassment going on was with these community meetings. Again, as this court has repeatedly said, context matters. I believe a jury could find that these were not just average meetings, but these were really very significant meetings. These were meetings that were set up as a result of a class action lawsuit. They are specifically designed to ensure the proper running by community participants of Miles. It was a critical part of Ms. Robertson's job, a critical way in which she was able to continue to communicate with the community. We have the evidence of one of the community members who came forward and said, even at the very first meeting, it was obvious that Ms. Evans was extremely disrespectful to Ms. Robertson, and thereafter, Ms. Evans told Ms. Robertson did not permit her to come to any more of those meetings. Again, a material adverse action by Ms. Evans towards Ms. Robertson. And then the other particular job duty that was taken away was resource allocation, and that's an extremely important part, and I believe a jury could agree, of her job in which there's 350 people that she had directly and indirectly reporting to her, because timeliness of providing these services was a huge issue, making sure and moving around people and duties to ensure that this timeliness takes place. That's what resource allocation involves. Resource allocation, yes. Human resource allocation. So these are all done in the context of also the daily slights, the comments of I'm going to do things the right way. And then the next part, besides the material adverse action, we also have to look at is the causation. Why would somebody who didn't even know Mr. Kamen care? And I think that Ms. Evans said that herself. She said, I don't want you to do the same things to me that you did to Mr. Kamen. It's your fault that he's gone, and you created this problem. And she said that, and we have testimony from a number of people who heard that. With respect to the promotion, I believe that a jury could conclude that retaliatory motives were involved in this decision making. The district court and the defendants try and minimize the fact that Ms. Evans had absolutely no experience in income maintenance, the very business of miles. But we have testimony from others who say they were extremely concerned and panicked that somebody was coming in who didn't have this experience. That is from the community and as well from section chiefs who said, who were saying, this is crazy. You can't be hiring somebody without this very, very critical skill. But wouldn't that argument mean that any in-house candidate would be objectively superior to any outside hires because they would have the institutional knowledge that those outside the department would not yet have? Not necessarily, because you could have experience working in income maintenance. I mean, this was a, the state took over the Milwaukee department because of the problems, but you could have somebody from any of the counties who had experience in income maintenance. You could have somebody from another state who had worked in income maintenance. Ms. Evans had absolutely no experience working in income maintenance. And I see my time is getting short, so I'd like to use the rest of the words. Thank you. Mr. Kilpatrick. Good afternoon, your honors. May it please the court. My name is Stephen Kilpatrick. I'm an assistant attorney general with the Wisconsin Department of Justice, representing the Wisconsin Department of Health Services as defendant. The Wisconsin Department of Health Service did not retaliate against Vanessa Robertson for notifying management about race and sex discrimination complaints made by her subordinates against her former director and boss of the Milwaukee Enrollment Services, Ed Cannon. Rather, after the director resigned the department nine months later, merely chose to hire another candidate that it thought was competent and qualified for the position. Now how do you respond to the argument that she was prevented from performing key elements of her job when Ms. Evans' harassment precluded her effective participation in public meetings and when Evans removed the responsibility for resource allocation? Is there evidence in the record supporting that those were key elements of her job? The answer is no, your honor. There is no evidence regarding resource allocations. And frankly, I'm not quite sure what that meant until a few minutes ago, what resource allocation meant. Throughout the briefing that wasn't explained, it wasn't pointed to by Ms. Robertson as a requirement or a criteria in her position description. And with regard to the community meetings, I want to correct what opposing counsel said. She said that Ms. Evans said not to come to the meetings. That's not true. Ms. Evans may have said don't talk at the meetings, but she never said don't come to the meetings. And it's clear why Ms. Evans didn't want Ms. Robertson to talk at the meetings, because Ms. Evans was the new boss. For several months in between January and November, Ms. Robertson was the unofficial acting director. So yes, she would attend the meetings and talk, but then once Ms. Evans was hired as the director, of course she would want to speak and answer those questions. So no one else could speak? No. All that is in the record is that Ms. Evans said to Ms. Robertson, you are not to speak to answer the questions that arose at the community meetings. So if community leaders and citizens are asking questions, the new leader, the new director, Ms. Evans, would then speak. So Ms. Robertson was not in that position as the director anymore at that time after Ms. Evans' hire. So that's the big difference. Another thing is it really doesn't make any sense about why Ms. Evans would have any retaliatory animus towards Ms. Robertson for forwarding a complaint that led to the resignation of someone she never worked with. She had no interactions with Mr. Kamen at all. The reason that opposing counsel said was that there was a quote she talked about referencing the complaint and she didn't want what happened to Ed Kamen to happen to her. But that doesn't make much sense because it would assume that Ms. Evans assumes that she would be making some type of discriminatory comments like Mr. Kamen did. And that doesn't make much sense at all. Regarding the failure to promote or the retaliation by failure to promote, I just want to make clear that in Ms. Robertson's brief, she, I believe, has a wrong legal standard. She has said that it is whether a jury could conclude Ms. Robertson was the individual with superior qualifications in managing large organizations. And the proper legal standard is found in Millbrook and that is evidence of a plaintiff's competing qualifications does not establish evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position. And the record here shows that these two finalists were comparably qualified and the department decided to choose Ms. Evans over Ms. Robertson because it believed she had a vision for running miles that Ms. Robertson didn't have and performed better in the interview and did have a master's. There can be no dispute that somebody could see and decide that Ms. Evans was more qualified than Ms. Robertson and that would sink her claim. And there is also no evidence that that decision is a lie, which Ms. Robertson would have to prove as pretext. There's one other point I wanted to make in regard to the opposing brief. It's a reference to the Reeves decision from the U.S. Supreme Court and I believe that Ms. Robertson is just incorrect when she references that in her reply brief. She cites Reeves for the proposition that the court can't determine or consider impartial witnesses and that is not what Reeves said. Reeves was a decision not at summary judgment but it was a post verdict, jury verdict case about a matter of law, judgment as a matter of law. So it's not what Ms. Robertson claims it stands for. Of course the department would be unable to articulate a legitimate non-retaliatory reason such as Ms. Robertson was not the better candidate if what Ms. Robertson says in her brief were true. Again, as I alluded to in the beginning, as to causation, the lack of temporal proximity is very, very important in this case. The first instance of possible retaliation by the department would have been not to give the tasks of the director position to Ms. Robertson. They could retaliate against her and obviously that didn't happen. They allowed her to work in that position for several months. Finally, with regard to other hostile work environment claim, retaliation by hostile work environment claim, there is simply not enough evidence in the record regarding how Ms. Evans treated Ms. Robertson. Even if what Ms. Robertson said was true, the eyes, the literal turning of her back to Ms. Robertson, telling her to be quiet, just does not raise, rise to the level of a material adverse action. It's not hostile work environment. If there are no other questions, I would just ask that the court affirm the district court decision. I'd just like to clarify a few issues. One, with respect to the key job elements, the resource allocation, I talked about that. There is evidence to support that and that is in the affidavit of Daniel McNeil, another supervisor who said that that, who identified that as a key job. The supervision of the 10 to 12 people directly and the 350 indirectly, that is in Ms. Robertson's job description. Then, with respect to the reasoning, while there are many times that, several times pointed out that Ms. Evans did make comments about Ms. Robertson and her involvement in the Kamen complaint. It's the testimony of Section Chief Thompson, who states that in a Section Chief meeting, Ms. Evans said that she needed to clean up the poor morale that Ms. Robertson created by Mr. Kamen's forced resignation. I think implying or clearly stating that she saw Ms. Robertson as the bad actor in that scenario, and that she needed to, and taking that in connection with the idea that she wasn't going to wind up like Mr. Kamen, being forced out by this bad action, is where that causal connection comes in. Thank you very much. We ask that the decision be overturned. Thank you both so much. You also have a good trip home. Actually, I'm off to New Orleans. What? I'm off to New Orleans, so it'll be a little bit before I get there. Wow. Where are you off to? Just back to Wisconsin. Okay. All right. That's it, and this court is in recess until a long time. Wednesday. Wednesday. Thank you. Bye. Thank you.